# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CIVIL NO. 26--_____** |
| | : | |
| **v.** | : | |
| | : | |
| **TWO MILLION FOUR HUNDRED AND** | : | |
| **FIFTY-ONE THOUSAND ONE HUNDRED** | : | |
| **AND NINETY-TWO DOLLARS AND FORTY-** | : | |
| **EIGHT CENTS ($2,451,192.48) FROM** | : | |
| **CENTENNIAL BANK ACCOUNT NUMBER** | : | |
| **503680162,** | : | |
| | : | |
| **Defendant *in rem*** | : | **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by its attorneys, David Metcalf, United States Attorney for

the Eastern District of Pennsylvania, and Justin Ashenfelter, Assistant United States Attorney,

and David Weisberg, Special Assistant United States Attorney, in accordance with Supplemental

Rule G(2) of the Federal Rules of Civil Procedure, for its complaint alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit and condemn, to the use and benefit of the

United States, two million four hundred fifty-one thousand one hundred and ninety-two dollars

and forty-eight cents ($2,451,192.48) seized from Centennial Bank account number 503680162,

(hereinafter known as "Defendant Currency") pursuant to 18 U.S.C. § 981(a)(1)(A), which

provides, in pertinent part, that "[a]ny property, real or personal, involved in a transaction or

attempted transaction in violation of section 1956 [or] 1957 . . . of this title, or any property

traceable to such property" is subject to forfeiture, and or pursuant to 21 U.S.C. § 881(a)(6),

which provides for the forfeiture of all moneys, negotiable instruments, securities, or other things

of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq*., and proceeds traceable to such exchanges, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title II.

## STATUTORY BACKGROUND

2.      Title 18, United States Code, Section 981(a)(1)(A) provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 [or] 1957 . . . of this title, or any property traceable to such property" is subject to forfeiture.

3.      Title 21, United States Code, Section 881(a)(6) provides that "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . , all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [Title II of the Controlled Substances Act]" shall be subject to forfeiture to the United States and no property right shall exist in them.

## THE DEFENDANT CURRENCY

4.      The defendant *in rem* (the Defendant Currency) is funds seized from a bank account, pursuant to a federal seizure warrant, and is further described as follows: two million four hundred fifty-one thousand one hundred and ninety-two dollars and forty-eight cents ($2,451,192.48) seized from Centennial Bank account number 503680162 ("the Centennial account") by the Drug Enforcement Administration ("DEA"), pursuant to a seizure warrant issued by a United States Magistrate Court Judge in the Eastern District of Pennsylvania on December 22, 2020.  The bank account was in the name of Southeast Capital, LLC ("Southeast

Capital"), and the sole signatory was Avraham Y. Shaulson, then of Miami Beach, Florida, who was held out as the "manager" of Southeast Capital.

## JURISDICTION AND VENUE

5.    Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Currency.  This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6.    This Court has in *rem* jurisdiction over the Defendant Currency under 28 U.S.C. § 1355(b).  Upon the filing of this complaint, the plaintiff requests that this Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), and 28 U.S.C. § 1395(a) and (b), because a civil proceeding for the forfeiture of property may be prosecuted in any district in which any of the acts giving rise to the forfeiture occurred.  Here, venue is proper because in October 2020, three wire transfers into the Centennial account, which were proceeds of the underlying criminal conduct that is the subject of Count I and Count, originated from a bank account in this district.

## FACTUAL BASIS OF THE FORFEITURE CLAIM: THE SEIZURE OF THE DEFENDANT CURRENCY AND INVESTIGATION

8.    Between in or about 2019 through in or about 2024, the DEA investigated a Mexico-based Drug Trafficking and Money Laundering Organization ("DTMLO") that was operating in a number of states in the United States, including but not limited to in the Eastern District of Pennsylvania.  The DTMLO's leadership included a Mexico-based money broker who the DEA agents refer to as "The Broker."

9.      "The Broker," in his capacity as a money launderer, arranged the pick-up of bulk amounts of currency from illegal narcotics traffickers in the United States and facilitated its laundering back to the drug sources of supply ("SOS(s)") in Mexico.  "The Broker" had direct contact with the drug SOS(s) in Mexico, who alerted "The Broker" when their local domestic drug traffickers had bulk drug proceeds that needed to be laundered.  "The Broker" then utilized couriers to pick up the bulk drug proceeds in the United States, including in Philadelphia, Pennsylvania.  Once the couriers obtained the bulk drug proceeds, "The Broker" would instruct the couriers to transfer or deposit the drug proceeds into bank accounts identified by "The Broker," which money would then be funneled to Mexico and ultimately to the drug SOS(s).

10.     At some point prior to October 2020, the DEA inserted an undercover Task Force Officer ("TFO") into the DTMLO.  The TFO posed as a business (Sarkedrom Management; hereafter "Sarkedrom") that could help "The Broker" move drug proceeds from domestic narcotics traffickers to the cartel and drug SOS(s) in Mexico.  Sarkedrom operated out of the Eastern District of Pennsylvania during all times relevant to this complaint.

11.     Thereafter, on various occasions, "The Broker" told the TFO where domestic drug traffickers had drug proceeds that needed to be picked up and laundered, including locations in Philadelphia, Pennsylvania.  The DEA would then use informants or undercover agents to pick up the drug proceeds, some of which were deposited into the DEA-controlled Sarkedrom bank account.

12.     After the drug proceeds were picked up and deposited into a bank account, "The Broker" would then provide the DEA TFO with specific bank accounts and wire instructions on where to send the recently collected proceeds.  Through the utilization of a DEA controlled bank

account, the TFO would then wire the funds to the previously identified accounts at the direction of "The Broker."

13.     On or about October 22, 2020, "The Broker" directed the TFO to transfer approximately $220,000 in drug proceeds to the Centennial account.  The TFO wired this money to the Centennial account on or about this same date.

14.     On or about October 26, 2020, "The Broker" directed the TFO to wire an additional approximately $113,995.30 in drug proceeds to the Centennial account.  The TFO wired this money to the Centennial account on or about this same date.

15.     On or about October 27, 2020, "The Broker" directed the TFO to transfer approximately $177,235.00 in drug proceeds to the Centennial account.  The TFO wired this money to the Centennial account on or about this same date.

16.     The total amount of drug proceeds transferred by the TFO to the Centennial account in October 2020—at "The Broker's" direction—was approximately $511,230.30.

17.     The drug proceeds deposited into the Centennial account were comingled with other funds obtained from unlawful sources, including other deposits and transfers to the Centennial account in October 2020, in furtherance of the money laundering activity directed by "The Broker."

### The Seizure of the Centennial Account

18.     As noted above, a federal seizure warrant was issued for all funds in the Centennial account on or about December 22, 2020.

19.     The total amount of funds seized from the Centennial account was approximately $2,986,711.61, which included the drug proceeds transferred by the TFO into the Centennial account in October 2020, at "The Broker's" direction.  The seized funds, including the

Defendant Currency, have been held in an account controlled by the United States Marshal Service in the Eastern District of Pennsylvania since on or about December 31, 2020.

20.    The Defendant Currency consists of approximately $2,451,192.48 of the funds seized from the Centennial account on or about December 22, 2020.  The Defendant Currency is comprised of the funds that were deposited or transferred to the Centennial account from the following three sources:

    a.    The DEA-controlled Sarkedrom bank account, described above;

    b.    OCBC Bank (China) BT-ONL LIMITED, and;

    c.    Vector Casa De Bolsa, Mexico, CD TS TECHNOLOGIA Y SERVICIOS.

21.    On information and belief, both OCBC Bank (China) BT-ONL LIMITED and Vector Casa De Bolsa, Mexico, CD TS TECHNOLOGIA Y SERVICIO S are foreign entities engaged in money laundering of specified unlawful activities.

22.    Additional funds that were in the Centennial account at the time of the seizure, which are not part of the Defendant Currency, included funds deposited or transferred from the following sources:

    a.    Bank of America, Allison Circle LLC; and

    b.    Caceis Bank Luxembourg 1/LUXEMBOURG LIFE FUND FCP.

***Admissions by Potential Claimants***

23.    In or about January 2021, an attorney holding himself out as counsel for Shaulson and Southeast Capital contacted the government to arrange for a meeting regarding the government's seizure of the funds in the Centennial account.

24.    At a meeting in Miami, Florida, in January 2021, in the presence of several DEA agents, Shaulson and counsel for Shaulson and Southeast Capital verbally disclaimed any

interest in or ownership of the funds seized from the Centennial account, including the Defendant Currency, and expressly waived the right to seek to claim the seized funds. During that meeting, Shaulson also claimed that he allowed his friend, Uri Ansbacher, to use the Centennial account for Ansbacher's business purposes, although Shaulson was unable to identify the nature of Ansbacher's purported business.

25. Beginning in or about January 2021, an attorney holding himself out as counsel for Ansbacher contacted the government for the purpose of discussing Ansbacher's alleged interest in the funds seized from the Centennial account, including the Defendant Currency. Those discussions continued for several years, including through additional attorneys subsequently hired by Ansbacher. Ansbacher's attorneys were unable to make a credible claim to support Ansbacher's alleged legitimate ownership of the Defendant Currency from a lawful source.

26. In June 2026, a new attorney purporting to represent Southeast Capital contacted the government and asserted a claim for the funds seized from the Centennial account, including the Defendant Currency. Counsel for Southeast Capital was unable to make a credible claim to support legitimate ownership of the Defendant Currency through a lawful source; moreover, counsel for Southeast Capital failed to acknowledge that his client had waived any right to pursue these funds in January 2021.

### COUNT I: Forfeiture Under 18 U.S.C. § 981(a)(1)(A)

27. The Defendant Currency is property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 of Title 18 of the United States Code, or is any property traceable to such property.

28.     By reasons of the forgoing, the Defendant Currency is subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(A).

### COUNT II: Forfeiture Under 21 U.S.C. § 881(a)(6)

29.     The Defendant Currency is moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, or proceeds traceable to such an exchange, and/or moneys, negotiable instruments and securities used or intended to be used to facilitate any violation of Title II of the Controlled Substances Act.

30.     By reasons of the foregoing, the Defendant Currency is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

WHEREFORE, Plaintiff United States of America requests:

1.     The Defendant Currency be proceeded against according to the law and the rules of this Court, and that due notice be given to all the interested parties to appear and show cause why forfeiture should not be decreed.

2.      This Court, for the reasons set forth above, adjudge and decree that the Defendant

Currency be forfeited to the United States of America and disposed of in accordance with

existing laws, together with costs, and for such other relief as this Court deems proper and just.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Matthew T. Newcomer*
MATTHEW T. NEWCOMER
Assistant United States Attorney
Deputy Chief, Economic Crimes /
Asset Recovery & Financial Litigation

*/s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

*/s/ David Weisberg*
DAVID WEISBERG
Special Assistant United States Attorney

Date: June 18, 2026

# **V E R I F I C A T I O N**

Dale T. Keddie, being of legal age, verifies and, pursuant to 28 U.S.C. § 1746(2), declares and states as follows:

1.     I am a Task Force Officer for the Drug Enforcement Administration that was assigned to the investigation in this case.

2.     I have reviewed the foregoing Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

3.     The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a special agent.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2026, at Philadelphia, Pennsylvania.


*/s/ Dale T. Keddie*
Task Force Officer
Drug Enforcement Administration